IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FERDELL BAKER,<br><br>Plaintiff,<br><br>v.<br><br>LENOVO US FULFILLMENT CENTER, LLC, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:26CV698 |

**<u>ORDER, MEMORANDUM OPINION, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE</u>**

This matter is before the Court on *pro se* plaintiff Ferdell Baker's application to proceed *in forma pauperis*, *see* Docket Entry 1. In his Complaint, Baker alleges that he was working at Lenovo US Fulfillment Center, LLC ("Lenovo") when the defendants allegedly discriminated against him based on his race, created a racially hostile environment, subjected him to forced labor, and terminated him in retaliation without paying him all of his earned leave and wages. The Court should dismiss the Complaint in its entirety because Baker has failed to state a claim. Thus, Baker's application is granted for the limited purpose of allowing the Court to consider a recommendation of dismissal.

I. STANDARD OF REVIEW

The Court must dismiss a case filed *in forma pauperis* if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). That is, a plaintiff must make factual allegations that are "enough to raise a right to relief above the speculative level." *See Twombly,* 550 U.S. at 555 (citation omitted). A *pro se* plaintiff's complaint must be construed liberally in his favor. *See Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015).

Although on a motion to dismiss, courts view the factual allegations in the complaint as true and draw all

inferences in the plaintiff's favor, *see Twombly*, 550 at 555–56; *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023), courts are not required to "accept as true 'legal conclusions drawn from the facts' or any other 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Furthermore, a plaintiff is not required to prove his case in the complaint, *see, e.g.*, *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012); *Scott v. City of Durham*, No. 1:20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021), but the complaint's allegations should "allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged," *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (cleaned up).

In addition to assessing the facts alleged in the complaint, the Court "evaluates . . . documents attached [to] or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

## II. FACTS

In June 2026, Baker, an African American man, worked as a Logistics Administrative Clerk at the Lenovo facility in Whitsett, North Carolina. *See* Am. Compl. Parties ¶ 1, Docket Entry 9. On June 25, while on his unpaid lunch break, Baker passed through the facility's metal detector and set off the alarm because of the walkie-talkie in his back pocket. *See id.* § B ¶ 2. The frontline security guard followed procedure and began to use his wand on Baker, but, before he could finish, Sean Daily, the facility's Head of Security and Security Manager and a Caucasian man, stepped in. *See id.* Parties ¶ 4, § B ¶ 3.

Daily "aggressively interjected," stopped the screening, "issued a series of hostile commands," ordered Baker "to strip off his watch, remove his belt, and completely empty his pockets." *See id.* § B ¶ 3. Baker "explicitly resisted" and walked "away toward the lunchroom while utilizing his radio to request immediate intervention from an operational CEVA[1] Supervisor." *See id.* As Baker walked toward the lunchroom, Daily "escalated the confrontation by pursuing him, yelling, and aggressively demanding that [Baker] immediately surrender his physical employee identification badge." *See*

[1] CEVA Logistics US, Inc. employed Baker and assigned him to work at the Lenovo facility. *See* Am. Compl. at Parties ¶ 3.

*id.* § B ¶ 4. Baker "felt acutely threatened, terrorized, and unlawfully restrained inside the passageway, fearing immediate physical escalation." *See id.; see also* Ex. K (claiming to evidence a pre-existing broken rib that Baker alleges made him feel vulnerable). "Daily only aborted his pursuit when he realized Lenovo Human Resources personnel were physically present inside the lunchroom area." *See id.* § B ¶ 4. Nevertheless, he "ordered the front-door personnel to track and intercept [Baker] upon exiting." *See id.* While Baker was waiting for "911 emergency vehicle intervention," Daily was "lingering and waiting for [Baker] to exit alongside CEVA Management personnel." *See id.*

In response, five minutes after calling 911, Baker emailed CEVA Human Resources and Operations Management about the "Attack on Lenovo Property While at Work." *See id.* § C ¶ 2.; *see also* Ex. A. Instead of executing a safety investigation, reviewing video surveillance, or suspending Daily, a CEVA Manager "intercepted [Baker] later that afternoon[,]" "demanded [Baker's] physical badge, immediately terminated his employment, and issued a sweeping property trespass order." *See id.* § C ¶ 3.

On June 26 and June 29, Baker submitted alerts to the Guilford County Sheriff Danny Rogers notifying him of the responding deputies' refusal to investigate Daily's commission of a Class F felony and to review the surveillance video. *See id.* § C ¶ 4.; *see also* Exs. D, F. At the same time, Baker mailed additional notices to Lenovo's corporate offices and CEVA. *See id.* § D ¶¶ 1–3.; *see also* Exs. B, E.

After Baker's termination, Lenovo and/or CEVA "refused to settle [Baker's] regular final paycheck, entirely withholding 23.67 hours of accrued PTO and floating holiday pay totaling $838.56, along with 55 hours of mandatory travel/security processing wages." *See id.* § D ¶ 4.; *see also* Ex. M.

Even construing these allegations liberally, and considering the documents attached to the Complaint, Baker has not sufficiently stated a federal claim against any defendant. The court should, therefore, decline to exercise supplemental jurisdiction over the state law claims.

## III. DISCUSSION

### A. Baker does not plausibly allege a § 1981 claim.

Baker alleges that Lenovo, CEVA, and Daily discriminated against him in violation of 42 U.S.C. § 1981. Pursuant to § 1981, employers are prohibited from discriminating against employees based on race "in making and enforcing contracts." *Woods v. City of Greensboro*, 855 F.3d 639, 645 (4th Cir. 2017) (quoting 42 U.S.C. § 1981). Importantly, § 1981 "'guards generally against race-based discrimination in the workplace.'"

*Katti v. Arden*, 161 F.4th 217, 227 (4th Cir. 2025) (quoting *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 399 (4th Cir. 2021)).

To state a § 1981 claim, Baker "must plausibly allege 'both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest.'" *Id.* (quoting *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022)). In other words, a plaintiff must plausibly allege that the discrimination "'would not have happened but for the plaintiff's race,'" *id.* (quoting *Nadendla*, 24 F.4th at 305), and as is relevant here, the intentional discrimination resulted in the plaintiff's termination, *see Bailey v. Islands Mech. Contractor, Inc.*, 827 F. Supp. 3d 639, 657 (E.D.N.C. 2026) (noting that "an adverse employment action includes a disadvantageous change to the compensation, terms, conditions, or privileges of employment because of a protected status") (citation omitted).

In support of his § 1981 hostile work environment claim, Baker "must plausibly allege that (1) [he] experienced unwelcome conduct, (2) the conduct was based on race, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer." *Id.* at 659 (citing *Seabrook v. Driscoll*, 148 F.4th 264, 271 (4th Cir. 2025), among others).

As is immediately apparent, Baker's claims fail because he does not plausibly allege, with allegations of direct evidence or otherwise,[2] that Daily or anyone else took any action *because of his race*. True, he alleges that he is African American and Daily is Caucasian. And, in his June 29 email to CEVA management, Exhibit E, he described Daily's pursuit of him to the break room as "a Travon Martin scenario."[3] But the only other allegations are conclusory with no factual support. *See Katti*, 161 F.4th at 228 ("That [the plaintiff] argues [the defendants'] actions 'can only be explained' by race does not make it so.").

For instance, he alleges that he "was systematically subjected to heightened, aggressive scrutiny, pervasive surveillance, and disparate treatment by Defendant Daily that was not directed at similarly situated non-African American colleagues." Am. Compl. § B ¶ 1. But he does not allege anything more about the "similarly situated non-African American colleagues." *See Katti*, 161 F.4th at 228 (recognizing that "different treatment between a plaintiff and a comparator who is

[2] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), applies to § 1981 claim. *See Bailey*, 827 F. Supp. 3d at 656–57 (citing cases).

[3] The Court takes judicial notice that Trayvon Martin was a seventeen-year-old Black child who was shot and killed by George Zimmerman, a 28-year-old multiracial man, on February 26, 2012.

similarly situated in all relevant respects can support an inference of intentional discrimination under § 1981"). Daily allegedly "also bullied" Lenovo Human Resources representatives "Gabe and Mr. Vincent," among others. *See id.* § C ¶ 2. But Baker does not allege anything more about Gabe, Mr. Vincent, or others whom Daily "targeted" for enforcement. "By offering speculation rather than facts, [Baker has] pled precisely the kind of labels, conclusions, recitation of a claim's elements, and naked assertions that the Rules of Civil Procedure forbid." *Katti*, 161 F.4th at 228 (quotations omitted).

Moreover, no matter how Baker tries to fit his facts within § 1981, it does not provide a "general civility code" for the workplace *See Bailey*, 827 F. Supp. 3d at 660 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277–81 (4th Cir. 2015)).

Because Baker fails to allege plausibly that any defendant discriminated against him in violation of § 1981, the claim should be dismissed.

B. Baker does not plausibly allege a § 1983 claim.

Pursuant to 42 U.S.C. § 1983, Baker asserts a due process and equal protection claim against the Guilford County Sheriff's Office and the Guilford County Sheriff for the deputies' failure to investigate "a documented Class F felony, and their failure to review available on-site video evidence." *See* Am. Compl. § C ¶ 4.

Section 1983 "is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States" by persons acting under color of state law. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A plaintiff bringing suit pursuant to § 1983 must show that a person acting under color of state law violated a constitutional or other federal legal right. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

It is well established, though, that there is no constitutional right to an investigation by law enforcement. *See Graves v. Lioi*, 930 F.3d 307, 319–20 (4th Cir. 2019) (citing *Doe v. Rosa*, 795 F.3d 429 (4th Cir. 2015); *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)); *McGagh v. Lippe*, No. 22-504-BAH, 2026 WL 1318325, at *6 (D. Md. May 13, 2026) "[T[here is no constitutional right to the initiation of an investigation . . . ."); *Richardson v. Birkhead*, No. 1:24CV810, 2024 WL 4859504, at *3 (M.D.N.C. Oct. 24, 2024) ("Plaintiff has no general right to an investigation, even a criminal investigation, enforceable under § 1983."), *report and*

*recommendation adopted*, 2024 WL 4851382 (M.D.N.C. Nov. 21, 2024).

"Nor do police officers have an affirmative duty to investigate crimes in a particular manner." *Hubbard v. Goldsboro Police Dep't*, No. 5:24-CV-267-FL, 2024 WL 4179158, at *3 (E.D.N.C. June 24, 2024) (citation omitted), *report and recommendation adopted*, 2024 WL 3899362 (E.D.N.C. Aug. 22, 2024), *aff'd*, 2025 WL 314809 (4th Cir. Jan. 28, 2025) (unpublished). In sum, law enforcement's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S. at 197.

But if "the government 'selectively den[ies] its protective services to certain disfavored minorities,'" that failure to investigate is actionable as a violation of the Equal Protection Clause. *See Trantham v. Henry Cnty. Sheriff's Off.*, No. 4:10CV58, 2011 WL 863498, at *6 (W.D. Va. Mar. 10, 2011) (relying on *DeShaney*, 489 U.S. at 197 n.3), *aff'd*, 435 F. App'x 230 (4th Cir. June 20, 2011) (unpublished).

To state a plausible equal protection claim, a plaintiff must allege "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020) (citation omitted).

As an initial matter, the Guilford County Sheriff's Office lacks the capacity to be sued under § 1983. *See Murdock v. City of Greensboro*, No. 1:25-cv-909, 2026 WL 2939694, at *4-5 (M.D.N.C. Sept. 30, 2026) (collecting cases).

While a plaintiff *can* sue the Sheriff pursuant to § 1983, "official capacity liability attaches under Section 1983 only if 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury.'" *Mobley v. Guilford Cnty. Sheriff's Off.*, No. 1:17cv115, 2017 WL 1409579, at *4 (M.D.N.C. Apr. 20, 2017) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992)), *report and recommendation adopted*, (M.D.N.C. May 24, 2017); *see also Simmons v. Corizon Health, Inc.*, 136 F. Supp. 3d 719, 722 (M.D.N.C. 2015) ("Plaintiffs cannot state a claim against Sheriff Barnes in his official capacity without alleging that Simmons' injuries were proximately caused by an official policy or custom of the Sheriff's office.") (citation omitted) (emphasis removed).

The "unconstitutional policy or custom" can arise as "an express policy," "decisions of a person with final policymaking authority[,]" omissions "such as a failure to train officers, that manifest[] deliberate indifference to the rights of citizens[,]" or "through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the

force of law.'" *Simmons*, 136 F. Supp. 3d at 722 (quoting *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)).

Here, there are a dearth of facts supporting an equal protection claim. There are no allegations of similarly situated individuals, much less that the deputies treated Baker differently or that they did so because of his race. *See Nofsinger v. Va. Commonwealth Univ.*, No. 3:12-CV-236, 2012 WL 2878608, at *9-10 (E.D. Va. July 13, 2012) (dismissing an equal protection claim for failure "to plead any facts whatsoever, with respect to how the three to six students described in her Complaint were similarly situated to her" and failure to plead facts "that would plausibly link Nofsinger's dismissal from the Program" to "discrimination on the part of the" defendants), *aff'd*, 523 F. App'x 204 (4th Cir. Apr. 2, 2013) (unpublished) (holding the "court correctly found Nofsinger failed to specify how the alleged students were similarly situated and, furthermore, failed to establish that any differential treatment was the result of discrimination").

Even if there were sufficient allegations of a constitutional violation, there are no facts that would support the liability of the Sheriff for that violation. Baker alleges that the Sheriff is the "final legal policymaker for the Guilford County Sheriff's Office" and that there is an "active custom of treating an African American emergency callers as a 'disgruntled employee' or trespasser." *See* Am. Compl. Parties ¶ 6; Count II. ¶ 34.

But Baker fails to allege any facts beyond these. And there are certainly no facts to support the conclusory allegation that there is an "active custom" – which requires a showing of "a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *See Simmons*, 136 F. Supp. 3d at 722. There are no facts about the deputies' interaction with Baker, other African American emergency callers, or anyone outside of the protected class. In other words, there are no facts of "a practice" much less a practice persistent and widespread enough to be a custom that deprived Baker of his rights.

Because Baker fails to allege a plausible equal protection claim, the § 1983 claim should be dismissed.

C. Baker does not plausibly allege § 1595 claim.

Pursuant to 18 U.S.C. §§ 1589 and 1595, Baker brings a claim for forced labor and coercion against Lenovo, CEVA, and Daily. *See* Am. Compl. Count III.

Section 1589 of Title 18 of the United States Code, the Trafficking Victims Protection Act of 2000 (TVPA), prohibits forced labor. Although it is a criminal statute, 18 U.S.C. § 1595 provides a *civil* remedy for "[a]n individual who is a victim of [forced labor] . . ." *See* 18 U.S.C. § 1595(A).

Forced labor arises when the defendant

> knowingly . . . obtains the labor or services of a person by any one of, or by any combination of, the following means—(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a).

"[T]he forced labor provisions of the TVPA . . . are intended to effectuate the constitutional prohibitions against slavery and involuntary servitude, by criminalizing the act of coercing persons into providing labor and services against their will and by providing a civil remedy to the victims of such actions." *Muchira v. Al-Rawaf*, 850 F.3d 605, 625 (4th Cir. 2017). As such, § 1589 "is 'intended to address *serious* trafficking, or cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than over violence.'" *Id.* at 618 (quoting *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)).

"The harm or threat of harm [is] 'considered from the vantage point of a reasonable person in the place of the victim[] [and] must be sufficiently serious to *compel* that person to *remain*' in [his] condition of servitude when [he] otherwise would have left." *Id.* (quoting *Dann*, 652 F.3d at 1170). Courts "'consider the particular vulnerabilities of a person in the victim's position'" and "whether a victim's 'acquiescence [would] be objectively reasonable under the circumstances.'" *Ninomiya v. Riviezzo*, No. 1:25-cv-1692-MSN-LRV, 2026 WL 1865358, at *4 (E.D. Va. June 29, 2026) (quoting *Muchira*, 850 F.3d at 618) (alteration in *Ninomiya*).

Furthermore, the employer must have "'*intended* to cause the victim to believe that [he] would suffer serious harm—from the vantage point of the victim—if [he] did not continue to work.'" *Muchira*, 850 F.3d at 618 (quoting *Dann*, 652 F.3d at 1170).

As a result, "[c]ourts thus typically conclude that forced labor has occurred in cases involving 'squalid or otherwise intolerable living conditions,' 'extreme isolation,' 'threats of inflicting harm upon the victim or others,' and 'exploitation of

the victim's lack of education and familiarity with the English language, all of which are used to prevent vulnerable victims from leaving and to keep them bound to their captors.'" *Ninomiya,* 2026 WL 1865358, at *4 (quoting *Muchira*, 850 F.3d at 618–19).

These provisions "are not intended to redress every bad employment relationship . . . ." *Muchira*, 850 F.3d at 625; *see also id.* at 620 (citing *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014), for the proposition that "we should not—without a clear expression of Congressional intent—transform a statute passed to implement the Thirteenth Amendment against slavery or involuntary servitude . . .").

Baker's allegations fall far short of stating a claim under § 1589(a). He alleges that, "while on unpaid, timed lunch break, [he] proceeded through the facility metal detector" and set it off with the walkie-talkie in his back pocket. Am. Compl. § B ¶ 3. Daily responded "aggressively," "halted the proper standard screening, and issued a series of hostile commands outside of established protocols." *Id.* Daily ordered Baker "to strip off his watch, remove his belt, and completely empty his pockets." *Id.* When Baker walked away, Daily pursued him, "yelling, and aggressively demanding that [Baker] immediately surrender his" employee badge. *Id.* § B ¶ 4. Baker "felt acutely threatened, terrorized, and unlawfully restrained inside the passageway, fearing immediate physical escalation." *Id.* "Daily subsequently ordered front-door personnel to track and intercept [Baker] upon exiting." *Id.* "[L]ater that afternoon," "CEVA Manager David Sutton intercepted [Baker]" and demanded his employee badge, terminated his employment, and ordered him off the property. *See id.* § C ¶ 3.

For this claim, Baker transforms those allegations into these: Lenovo, CEVA, and Daily "knowingly extracted [his] labor and services through an uncompensated on-campus routing system backed by a scheme of psychological coercion, physical intimidation, and systematic threats of automatic employment termination via an attendance point system." *Id.* Count III. ¶ 36. The defendants "operated an unlawful forced labor scheme" "[b]y trapping [him] within an uncompensated mandatory screening protocol and threatening immediate termination or loss of accrued wages for non-compliance[.]" *Id.* Count III. ¶ 37.

Baker has not alleged any vulnerabilities that would have prevented him from leaving his employment. He has not alleged any employer threats on par with those that courts have recognized as sufficiently stating a claim. He has not alleged any intent to cause Baker to believe he would suffer serious harm if he left his employment. "The threat of losing out on future income is not the type of severe financial harm that can give rise to a forced labor claim

under the TVPA." *Ninomiya*, 2016 WL 1865358, at *5 (comparing with threats of financial harm "where employers led victims to believe that, if they quit, they would owe the employer substantial sums of money").

What Baker *has* alleged is a bad employment situation, which is not cognizable under § 1595. That is because the TVPA "'serve[s] a much different purpose' than do . . . other employment laws.'" *Id.* (quoting *Muchira*, 850 F.3d at 624–25).

No matter how Baker frames these facts, they do not plausibly allege forced labor, and the claim should be dismissed.

D. The Court should not exercise supplemental jurisdiction over state claims.

The remainder of Baker's claims arise from state law – violations of the North Carolina Wage and Hour Act, wrongful termination, and civil conspiracy. *See* Am. Compl. Counts IV–VI. They are before the Court pursuant to 28 U.S.C. § 1367. But the Court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3).

Courts have "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (citation omitted). This is especially true when the "court dismisses all federal claims in the early stages of litigation." *See id.* (citation omitted). When exercising this discretion, courts assess the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Here, the Court having dismissed all federal claims at the *in forma pauperis* review stage, each of those factors weighs in favor of declining to exercise jurisdiction over the state law claims and, instead, dismissing them without prejudice.

E. Baker's motion to insert Exhibit H is granted.

Baker has moved to insert Exhibit H into the record, as an attachment to his Amended Complaint, because it was omitted from the docketing of his complaint. The motion is granted.

F. Baker's motion to compel ruling is denied as moot.

Baker has moved to compel this court to rule on his *in forma pauperis* application and direct the Clerk to effect service of process. The portion of the motion to compel a ruling is denied as moot. Because there is a recommendation of dismissal, the portion of the motion seeking an

order to effect service of process is denied.

## IV. CONCLUSION

It is therefore **ORDERED** that Baker's motion to insert Exhibit H, Docket Entry 11, is **GRANTED**;

It is further **ORDERED** that Baker's motion to compel a ruling and service of process, Docket Entry 12, is **DENIED**;

It is further **ORDERED** that Baker's application to proceed *in forma pauperis*, Docket Entry 1, is **GRANTED** for the limited purpose of allowing the Court to consider a recommendation of dismissal; and

It is **RECOMMENDED** that this case be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a federal claim.

JoAnna Gibson McFadden
United States Magistrate Judge

November 23, 2026